Ben FEINSTEIN, Appellant,

v.

UNITED STATES of America, Appellee.

Virgle Lee JACKSON, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 18852, 18934.

United States Court of Appeals Eighth Circuit.

Feb. 26, 1968.

John H. Goffstein, St. Louis, Mo., for appellant Ben Feinstein.

Lawrence O. Willbrand, St. Louis, Mo., for appellant Virgle Lee Jackson.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge, MATTHES, Circuit Judge and HARRIS, District Judge.

MATTHES, Circuit Judge.

Appellants were convicted by a jury of concealing and retaining in violation of 18 U.S.C. § 641 stolen United States postal money orders and related validating equipment having a value in excess of $100.00, with the intent to convert these items to their own use or gain, knowing the same to have been stolen. These timely appeals are from the judgments of conviction.[1]

Feinstein does not challenge the sufficiency of the evidence to sustain his conviction. His sole contention is that the district court erred in failing to grant his motion to suppress evidence obtained as the result of a search and seizure following his arrest, and in admitting into evidence the fruits of the seizure. He premises his contention on the ground that the arresting officers did not have probable cause to arrest him without a warrant and that therefore the subsequent search and seizure of the money orders and related equipment without a search warrant was illegal.

---

[1]. Feinstein was sentenced to imprisonment for a term of three years. Jackson also received a three year sentence, to run consecutively to a ten year term of imprisonment he is presently serving in a Missouri penitentiary. See State v. Jackson, 411 S.W.2d 129 (Mo.1967).

Jackson's principal contention is that the evidence was insufficient as a matter of law to make a submissible case against him and that the court therefore should have granted his motion for judgment of acquittal.

We find an abundance of evidence in the record establishing probable cause for the arrest of Feinstein. We conclude (1) that the search and seizure were incidental to and contemporaneous with a valid arrest and that the court properly denied the motion to suppress, and (2) that the evidence was sufficient to submit the question of Jackson's implication in the crime to the jury.

The salient facts are not controverted. The post offices at Wright City, Defiance, and Augusta, Missouri were burglarized on August 27, 1966. Postal money orders bearing the serial numbers of those seized by the arresting officers were stolen from each of these post offices. A money order machine and validating stamp seized in the search were stolen from the Augusta Post Office. Neither of the defendants had ever been employed at any of the three post offices and were not known to the postmasters in charge of these offices.

John R. Schaefer, a government informer, assisted the postal inspectors in their investigation which culminated in the arrest of appellants and the seizure of the evidence.

Schaefer conversed with appellant Feinstein on four occasions. During the first encounter on September 16, 1966 Feinstein informed Schaefer that he had a sizeable amount of postal money orders and the equipment necessary to validate them. A price of $10,000.00 was discussed. This information was conveyed by Schaefer the same day to Postal Inspector James G. Johnson.

Subsequently during a meeting on September 18th Feinstein handed Schaefer a "sample" of the money orders. On the following day the sample was delivered by Schaefer to Inspector Johnson, who made a record of the serial number thereon. This document was identified by the Inspector and admitted as part of the evidence.

On Tuesday morning, September 20th, Schaefer again met Feinstein on a parking lot in Concord Village in St. Louis County and discussed the sale of the money orders. Feinstein stated that he would meet Schaefer that afternoon on another parking lot located at the E. J. Korvette Shopping Center, Sunset Hills, Missouri. At the appointed time and place Feinstein and Schaefer met. Feinstein handed Schaefer a key and informed him that an automobile bearing a dealer's license plate was parked in the theater section of the lot. Schaefer drove a short distance to that area and found the described car which was unoccupied. He opened the trunk with the key provided by Feinstein and found a pillow case in the trunk. In the pillow case were the postal money order machine, a validating stamp, and some brown packages containing the postal money orders. Pursuant to a prearranged plan with the postal inspectors, who were stationed at various vantage points around the parking lot, Schaefer dropped two or three Kleenex, returned to the automobile occupied by Feinstein and returned the key to him.

Inspector James B. Thorn, who was in one automobile, saw Schaefer receive an object from Feinstein, leave the vicinity of Feinstein's automobile, and later return an object to Feinstein. Thereupon Thorn placed Feinstein and James G. Kage, an occupant in the Feinstein automobile, under arrest. At approximately the same time, pursuant to instructions communicated by radio from Thorn, Inspectors Johnson and Harry M. McLaughlin arrested Jackson and Theodore M. Ewing, who were in another automobile parked on a different part of the lot about 150 feet from the unoccupied vehicle. Thorn obtained the key from Feinstein and went to the vacant automobile where he impounded the contraband.

The government also proved by uncontradicted testimony that on Tuesday morning, September 20th, Feinstein had obtained a 1966 Ford automobile bearing

a dealer's license plate from an employee of Valley Ford, an automobile agency. This was the same unoccupied automobile containing the stolen money orders and equipment that was found on the parking lot on the afternoon of September 20th.

In addition to the testimony of Schaefer the postal inspectors who had been investigating the burglary testified and corroborated Schaefer's version of what had occurred.

Neither of the appellants testified. Feinstein, however, did offer some evidence in an effort to destroy the credibility of Schaefer's testimony.

The indictment was returned on October 5, 1966 charging appellants and Ewing and Kage with concealing and retaining the stolen money orders and other government property. Before the commencement of the trial the court, upon motion of the United States Attorney, dismissed the indictment as to Ewing and Kage.

## MOTION TO SUPPRESS

■ Feinstein's assertion that the postal inspectors did not have probable cause to make the arrest borders on the frivolous. The hearing on the motion to suppress established without contradiction that the informer Schaefer was reliable and so known to Inspector Johnson. He had informed for the government on prior occasions. The information acquired by Schaefer and passed on to the postal inspectors was corroborated in every detail. The inspectors knew that the post offices had been burglarized and that a large quantity of money orders and other equipment had been stolen, and were in the process of investigating the burglaries. They were aware that Feinstein had informed Schaefer of his possession of money orders and that they were for sale at a price of $10,000.00. One of the "sample" stolen money orders obtained by Schaefer from Feinstein was delivered to Inspector Johnson. Inspector Thorn witnessed the meeting on Tuesday morning between Schaefer and Feinstein. All of these circumstances pre-

cipitated the presence of the inspectors at the parking lot on Tuesday afternoon. They knew that Feinstein and Schaefer would meet at that time and place. Upon observing the signal from Schaefer Feinstein was placed under arrest, the search was made and the stolen property recovered. Here, if ever, the arresting officers had probable cause. McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Lee v. United States, 363 F.2d 469 (8th Cir. 1966), cert. denied, 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966); Churder v. United States, 387 F.2d 825 (8th Cir. 1968).

■ In support of his contention that the search was not incidental to a valid arrest, Feinstein argues that the automobile containing the contraband articles was located some distance away from the point of arrest. Although the record does not reveal with clarity the distance between the Valley Ford automobile and the place where Feinstein was apprehended, it is abundantly clear that the search and seizure took place almost immediately after the arrest. The searched automobile was under the constructive if not the actual possession of Feinstein. Sound authority supports our holding that the search and seizure were incidental to the arrest. See, e. g., Drummond v. United States, 350 F.2d 983 (8th Cir. 1965), cert. denied, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966); Haas v. United States, 344 F.2d 56 (8th Cir. 1965); United States v. Zimmerman, 326 F.2d 1 (7th Cir. 1963). Cf. Gullett v. United States, 387 F.2d 307 (8th Cir. 1967); Churder v. United States, supra.

■ Our holding on the probable cause issue disposes of the contention that the arresting officers should have procured a search warrant. It is well settled that where there is probable cause for an arrest and the search is incidental to the arrest a search warrant need not be obtained. Lee v. United States, supra; Churder v. United States, supra.

In summary we hold that the money orders and related equipment were legal-

ly seized and therefore properly admitted into evidence against both appellants. In view of our conclusion we need not decide the issue of Jackson's standing to challenge the validity of the search and seizure or discuss the implications of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

## SUFFICIENCY OF THE EVIDENCE

■ Jackson's principal argument is that the evidence is wholly insufficient to implicate him in the offense charged and that his motion for judgment of acquittal should have been granted. In resolving this question we review the evidence in the light most favorable to the verdict. Foston v. United States, 389 F.2d 86 (8th Cir. 1968).

We recognize that Jackson lacked any proprietary interest in or control over the automobile containing the stolen articles. Neither was he connected with the offense by direct evidence. There were, however, incriminating circumstances. Jackson and Ewing were situated approximately 150 feet from the place where the seizure occurred. Ewing, too, was under suspicion. Feinstein and Ewing were seen together by Inspector Johnson that same morning. More importantly, after Jackson was arrested he was fingerprinted. His prints and the stolen money orders were forwarded to the Identification Laboratory, Bureau of Chief Postal Inspector in Washington, D. C. Fingerprint expert Donald G. Mooney, an employee of the Inspector's Office, examined a number of the money orders for fingerprints. According to Mooney's unequivocal and uncontradicted testimony latent fingerprints which coincided with the prints obtained from Jackson were found on money order 33,645,999, the last order of the series. Mooney testified further that the fingerprints of every individual are different and that in his opinion the prints found on the stolen money order were made by Jackson.

■■ We do not agree with the contention that actual possession is a necessary element of the offense. Certainly if, as here, there are circumstances from which the jury could infer that the defendant did have possession of the money orders at some time subsequent to their theft, he is equally guilty with the party having actual possession of the stolen property. See, e. g., Stoppelli v. United States, 183 F.2d 391, 393–394 (9th Cir. 1950), cert. denied, 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950), holding that the presence of defendant's fingerprints on an envelope containing heroin was sufficient evidence of his possession of narcotics to sustain a conviction under 21 U.S.C. § 174. See also United States v. Ramsey, 291 F.2d 737, 738–739 (6th Cir. 1961), cert. denied, 368 U.S. 899, 82 S.Ct. 177, 7 L.Ed.2d 94 (1961); Corbin v. United States, 253 F.2d 646, 649 (10th Cir. 1958); United States v. Pisano, 193 F.2d 361, 364–365 (7th Cir. 1951); United States v. Chiarelli, 192 F.2d 528, 531 (7th Cir. 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683 (1952).

■ In comparison with the overwhelming evidence of guilt against Feinstein the government's case against Jackson is not as strong. Nevertheless we are constrained to conclude, as was the seasoned trial judge, that the circumstantial evidence was sufficient to warrant submission of the case to the jury. Under proper instructions the jury considered the issue as to Jackson's involvement in the unlawful possession and found that he was a party to that offense.

■ Finally, appellant Jackson claims error because the district court denied his motion for continuance on the morning of the trial. During a conference prior to commencement of the trial the court, upon motion of the United States Attorney, dismissed defendants Kage and Ewing from the case. Thereafter, in open court and before the jury was impaneled, counsel for Jackson moved for a continuance on the ground that the dismissal of the two defendants came as a complete surprise.

We find no merit in this contention. The record indicates that the case had previously been partially tried against all four defendants. That proceeding ter-

minated in a mistrial due to unsolicited prejudicial testimony from a government witness.

It is manifest from the record that Jackson's attorney was thoroughly familiar with all facets of the case. How Jackson was prejudiced as the result of the dismissal of the two defendants does not appear. Neither Kage nor Ewing testified for the government. The denial of the motion was not a clear abuse of the court's discretion. See Stamps v. United States, 387 F.2d 993 (8th Cir. 1967). Finding no error and the existence of sufficient evidence to support the verdicts the judgments are affirmed.