**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bruce L. AMIDON, Defendant-Appellant.**

**No. 80–1026.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 2, 1980.

Decided Sept. 17, 1980.

---

John J. Cleary, San Diego, Cal., for defendant-appellant.

Roger W. Haines, Jr., Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUG and FERGUSON, Circuit Judges, and EAST,* District Judge.

FERGUSON, Circuit Judge.

Bruce L. Amidon appeals the district court's denial of his motion to dismiss an order to show cause why his probation should not be revoked. He based his motion on the asserted illegality of his sentence under the Youth Corrections Act (YCA), 18 U.S.C. § 5010(b). We reverse.

Amidon pled guilty on March 12, 1979 to a misdemeanor information charging two counts of mutilating national bank obligations in violation of 18 U.S.C. § 333. After the court accepted his plea, it dismissed an underlying felony indictment charging two counts of connecting parts of different federal reserve notes in violation of 18 U.S.C. § 472. The court earlier had twice refused to accept Amidon's plea because he would not waive indictment on the misdemeanor counts. Amidon believed that without such an indictment the court could not sentence him under the YCA. Amidon's wish to avoid sentencing under the YCA is understandable, since under § 5017(c) and (d) of the Act, he could be sentenced for up to six years. 18 U.S.C. § 5017(c), (d).

* The Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

On April 17, 1979, the district court did sentence Amidon, over his objection, to study under the YCA, § 5010(e), and on September 17, it sentenced him to probation under the Act, § 5010(a). Amidon did not object to the sentence of probation, and he did not appeal either aspect of the sentencing.

After Amidon allegedly violated conditions of his probation, the district court on December 17, 1979, issued the order to show cause why probation should not be revoked. Amidon filed a motion to dismiss the order, arguing that his indeterminate sentence of commitment under the YCA was illegal because there was no compliance with the indictment clause of the fifth amendment and because sentencing under the YCA to a term longer than an adult would receive violates due process and equal protection. The district court denied the motion and sentenced Amidon to custody for an indeterminate period under 18 U.S.C. § 5010(b).

■ Amidon's challenge to the court's denial of his motion is an attack on the legality of the sentence the court imposed on April 17 and September 17. To secure review, he should have appealed the sentence when it was imposed. *See United States v. Reeb*, 433 F.2d 381, 383 (9th Cir. 1970); *United States v. Fort*, 409 F.2d 441, 443–44 (D.C. Cir. 1969). *See also Corey v. United States*, 375 U.S. 169, 174 & n.15, 84 S.Ct. 298, 302 & n.15, 11 L.Ed.2d 229 (1965). Alternatively, he could have filed a motion in the district court pursuant to Fed.R.Crim.P. Rule 35 to correct an illegal sentence. Although he did not technically do so, the motion that Amidon did file to dismiss the order to show cause operated in the same way as a Rule 35 motion. The grounds on which he based his motion to dismiss are the identical ones he would present in a motion under Rule 35. It would be pointless, then, to require Amidon to return to district court to re-present his motion under a new title. *See United States v. Tindle*, 522 F.2d 689 (D.C. Cir. 1975). Accordingly, we will construe his appeal as an appeal from a denial of a motion to correct an illegal sentence.

■ We addressed Amidon's first asserted ground of illegality, the indictment issue, in strikingly similar circumstances in *United States v. Ramirez*, 556 F.2d 909 (9th Cir. 1976). In *Ramirez*, it was originally held that a prosecution for a misdemeanor must be initiated by indictment when the defendant could be sentenced under the YCA. *Id.* at 923. The opinion was withdrawn on rehearing, however, after it was learned that the government had initiated the prosecution with a felony indictment involving the same facts as the misdemeanor information. The same situation is presented here. Defendant points to two differences between the two cases: (1) the defendant in *Ramirez* did not object at all to the government's filing of a superseding information; and (2) the court dismissed the underlying indictment in *Ramirez* after sentencing instead of after conviction, as here.

Amidon did make it clear to the district court that he would not waive indictment and did not wish to be sentenced under the YCA. Nonetheless, he was prepared to plead to the information precisely because he believed that doing so would protect him from a YCA sentence. He had no desire to be indicted and did not reply when the government offered to obtain an indictment. Moreover, when the court finally accepted Amidon's plea to the information, he made no objection to its filing. Thus, we do not find *Ramirez* distinguishable on the first ground.

The dismissal of the indictment here after conviction instead of after sentencing, as in *Ramirez*, also is inconsequential. In both cases, there was compliance with the indictment clause of the fifth amendment, which protects a defendant against being "held to answer" for an infamous crime except upon indictment. While it was held in *Ramirez* that potential sentencing under the YCA rendered a crime "infamous," *id.* at 922–23, it was clearly indicated that "held to answer" referred to being held over for trial. *Id.* at 910; *see Ex parte Wilson*, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1885). It is immaterial that the court there did not dismiss the indictment until

after sentencing. The determining factor in the withdrawal of the opinion on rehearing was that the prosecution had been *initiated* by indictment, *United States v. Ramirez, supra,* 556 F.2d at 925, as it was here. Because *Ramirez* is therefore indistinguishable, we must reject Amidon's claimed constitutional error based on the indictment clause.

■ Amidon's second claimed constitutional error is that sentencing under the YCA irrationally discriminates against those between the ages of 18 and 26, in violation of the equal protection and due process clauses. We do not reach this contention because we conclude that Congress has clearly evidenced its intention in the Federal Magistrates Act of 1979 that a youth may not be sentenced to a term of confinement under the YCA that exceeds the statutory maximum that an adult could receive.

■ Amidon is correct when he asserts that it is inequitable and unjust to permit imposition of the six year sentence under the YCA for offenses for which an adult, or a juvenile,[1] could be sentenced to just six months. Congress has noted this inequity and recently has taken steps to remedy it. Federal Magistrate Act of 1979, Pub.L. No. 96–82, 18 U.S.C. § 3401 (Supp. 1980). It is clear that, in doing so, Congress has rejected the earlier conclusions of this court and others that the rehabilitative purposes underlying the YCA justify a longer confinement,[2] *see, e. g., United States v. Leming,* 532 F.2d 647 (9th Cir. 1975), *cert. denied,*

424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 749 (1976); *Harvin v. United States,* 445 F.2d 675, 682 (D.C. Cir. 1971) (en banc).

This rejection is well warranted. As the government conceded at oral argument, the original rehabilitative purposes of the YCA have generally been abandoned. *See* Partridge, Chaset and Eldridge, "The Sentencing Options of Federal District Judges," 84 F.R.D. 175, 200 (1980).[3] The Bureau of Prisons currently assigns young offenders to exactly the same institutions as the older ones, under a policy of assigning each offender to an institution of the lowest security level consistent with adequate supervision. *Id.* at 201–02. Those sentenced under the YCA receive the same educational and vocational training opportunities as do adults. *id.* at 201–02. Furthermore, the Parole Commission generally uses the same guideline system for determining release dates for both adults and Youth Act offenders.[4]

Congress acted to eliminate the inequities between youth and adult sentencing in 1979, when it adopted legislation authorizing extensive civil and criminal jurisdiction for magistrates. Under the Federal Magistrate Act, a magistrate, with the consent of the parties, may perform many of the duties of a district court judge. Sentencing misdemeanants is one of these duties. Congress eliminated any possibility of unequal sentencing by a magistrate with the following provision:

> The magistrate may, in a case involving a youth offender in which consent to trial

---

1. Congress amended the Federal Juvenile Delinquency Act in 1974 to provide that a court may not sentence a juvenile to a term past age 21 or the maximum available for an adult convicted of the same offense, whichever is sooner. 18 U.S.C. § 5037(b), as amended September 7, 1974, P.L. No. 93–415 § 507, 88 Stat. 1136.

2. It is also clear that Congress does not believe that rehabilitation is incompatible with equal sentencing. In addition to requiring equal treatment, the Federal Magistrate Act also contains provisions carrying forward the conditional release and unconditional discharge provisions from the YCA, in order to "give guidance to the Bureau of Prisons and to preserve a

core concept of the Youth Corrections Act— that rehabilitation should be substituted for retribution for the sentencing of certain types of youthful offenders." House Conf. Rep. No. 96–444, [1979] U.S. Code Cong. & Admin. News, pp. 1469, 1490.

3. The authors are on the staff of the research division of the Federal Judicial Center.

4. The parole commission uses youth guidelines for all those under age 22, whether sentenced as an adult or as a youth. It does use youth guidelines, however, for those who are 22–26 and are sentenced under the YCA. *See* 84 F.R.D., *supra,* at 202.

before a magistrate has been filed . ., impose sentence and exercise the other powers granted to the district court . ., except that—

(1) the magistrate may not sentence the youth offender to the custody of the Attorney General . . . for a period in excess of 1 year for conviction of a misdemeanor or six months for conviction of a petty offense.

18 U.S.C. § 3401(g).

The legislative history makes clear Congress's disturbance at the potential sentencing disparities:

To avoid the possibility of a youth offender being punished for up to six years for a violation of a petty offense or misdemeanor, the conferees resolved that no youth offender could serve a longer sentence under the Youth Corrections Act than he could have served as an adult. This mandate—no more than one year for conviction of a misdemeanor or six months for conviction of a petty offense—explicitly is set forth in the conference substitute.

House Conf. Rep. No. 96–444 at 9–10, [1979] U.S. Code Cong. & Admin. News, pp. 1469–1490. *See also United States v. May*, 622 F.2d 1000, 1004 (9th Cir. 1980) (where the court upheld prosecution by information rather than indictment because the district court had issued an order finding that it would be inequitable to sentence any of the defendants to confinement under the YCA as such confinement might greatly exceed six months, the maximum statutory punishment for the offense charged).

We see no reason why a defendant who happens to be sentenced by a district court judge instead of by a magistrate should be subject to the potential inequity of indeterminate YCA sentencing nor why Congress would have intended such a result. We therefore find it implicit in the Federal Magistrate Act of 1979 that Congress intended that neither a district court judge nor a magistrate may sentence a youth under the Youth Corrections Act to a term of confinement longer than it could impose on an adult.

In light of Congress' explicit mandate against the inequity of a longer YCA sentence, the sentence imposed by the district court is reversed and the case remanded for further proceedings consistent with this opinion.