UNITED STATES of America, Appellee,

v.

**Donald Warren HUDSON, Appellant.**

No. 81–1392.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1981.

Decided Jan. 12, 1982.

Terry L. Pechota, Philip N. Hogen, U. S. Attys., D. S. D., Jeffrey L. Viken, First Asst. U. S. Atty., Patricia Riepel, Legal Intern, Dawn Bowen, Asst. U. S. Atty. (argued), Sioux Falls, S. D., Ted L. McBride, Asst. U. S. Atty., Rapid City, S. D., for appellee.

Thomas H. Barnes, Rapid City, S. D., for appellant.

Before HENLEY and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.

HENLEY, Circuit Judge.

Donald Warren Hudson, an inmate at the Federal Corrections Center in El Reno, Oklahoma, appeals from an order of the district court[1] denying his request for relief pursuant to 28 U.S.C. § 2255.

Hudson, on a guilty plea, was convicted in the district court of South Dakota of assault with a dangerous weapon in violation of 18 U.S.C. § 1153 and § 113(c). He was then committed to the custody of the Attorney General under the Federal Youth Corrections Act (YCA), 18 U.S.C. § 5010(b), until discharged as provided in 18 U.S.C. § 5017(c). He later filed a motion for reduction of sentence pursuant to Rule 35 of the Fed.R.Crim.P., which was denied by the district court. Hudson thereafter filed his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

The district court denied Hudson's prayer and he now appeals contending: (1) that because the effect of the sentence under § 5010(b) could be to subject him to a greater maximum sentence than one under

---

* The Honorable Oren Harris, United States Senior District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable Andrew W. Bogue, Chief Judge, United States District Court for the District of South Dakota.

§ 113(c), the sentence was invalid; (2) that he was not fully informed of the sentencing possibilities under the Youth Corrections Act; (3) that he received ineffective assistance of counsel; and (4) that he was not appointed counsel at his § 2255 hearing.

We affirm the judgment of the district court.

Hudson first asserts that his sentence under 18 U.S.C. § 5010(b)[2] of the YCA is illegal because the six year period of restraint possible under that section is greater than the maximum five year period of imprisonment he would have received if sentenced as an adult under 18 U.S.C. § 113(c). Relying upon *United States v. Amidon*, 627 F.2d 1023 (9th Cir. 1980), he argues that our prior decisions upholding longer sentences under the YCA, *Foston v. United States*, 389 F.2d 86 (8th Cir.), *cert. denied*, 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401 (1968); *Kotz v. United States*, 353 F.2d 312 (8th Cir. 1965), are no longer valid since the Bureau of Prisons has abandoned the underlying rehabilitative purposes of the YCA. Specifically, he quotes this paragraph from *Amidon*:

> The Bureau of Prisons currently assigns young offenders to exactly the same institutions as the older ones, under a policy of assigning each offender to an institution of the lowest security level consistent with adequate supervision.... Those sentenced under the YCA receive the same educational and vocational training opportunities as do adults.... Furthermore, the Parole Commission generally uses the same guideline system for determining release dates for both adults and Youth Act offenders.

*Amidon*, 627 F.2d at 1026.

Hudson complains that he too is currently confined with adult prisoners in the Federal Correctional Institution at El Reno, Oklahoma and receives the same treatment as they. He thus argues that he is deriving "no benefit" from his sentence under the YCA to justify the longer period of restraint. Hudson's objection to his confinement on this ground is well taken.

A youth sentenced under 18 U.S.C. § 5010(b) or (c) of the YCA is committed to the custody of the Attorney General "for treatment and supervision." An examination of the legislative history[3] surrounding the YCA indicates that Congress was primarily concerned with "substituting for retributive punishment methods of training and treatment" designed to promote the rehabilitation of those youthful offenders who showed promise of becoming useful citizens, thus avoiding the "degenerative and needless transformation of many of these young persons into habitual criminals." H.R.Rep.No.2979, 81st Cong., 2d Sess., *reprinted in* U.S.Code Cong. Service 3985. These congressional concerns are reflected in 18 U.S.C. § 5011 of the YCA which provides:

### Treatment

Committed youth offenders not conditionally released shall undergo treatment in institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment. The Director shall from time to time designate, set aside, and adapt institutions and agencies under the control of the Department of Justice for treatment. Insofar as practical,. such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.

---

**2.** Under § 5010(b) a court is authorized to sentence an offender to an indeterminate sentence of six years, even if the adult maximum sentence would be a lesser term.

**3.** Several cases have extensively discussed the legislative history and purpose of the YCA. *See, e.g., Durst v. United States*, 434 U.S. 542,

98 S.Ct. 849, 55 L.Ed.2d 14 (1978); *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *Watts v. Hadden*, 651 F.2d 1354 (10th Cir. 1981); *United States v. Hopkins*, 531 F.2d 576 (D.C.Cir.1976); *Brown v. Carlson*, 431 F.Supp. 755 (W.D.Wis.1977). To reiterate would serve no useful purpose.

■ Addressing the requirements of § 5011 the Supreme Court recently stated that "[s]ection 5011 provides two elements of mandatory treatment: first, youths must undergo treatment in an appropriate institution that will 'provide the essential varieties of treatment'; second, '[i]nsofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.' These two elements are statutorily mandated, and the discretion of the Bureau is limited to the flexible discharge of its responsibilities within these two broad constraints"[4] (footnote omitted). *Ralston v. Robinson*, —— U.S. ——, ——, 102 S.Ct. 233, 240, 70 L.Ed.2d 345 (1981). Thus, it is clear that the Act and its underlying purposes are not to be discarded, evaded or ignored by the Bureau of Prisons. Such actions vitiate Congress' goals in enacting the Act. Indeed, as Hudson points out, our decisions in *Kotz v. United States*, 353 F.2d 312 (8th Cir. 1965); *Foston v. United States*, 389 F.2d 86 (8th Cir.), cert. denied, 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401 (1968), and other decisions[5] upholding longer sentences under the YCA rest on the premise that "the basic theory of the Act is rehabilitation and in a sense this rehabilitation may be regarded as comprising the quid pro quo for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison." *Carter v. United States*, 306 F.2d 283, 285 (D.C.Cir.1962). It is of little doubt that "[w]here YCA offenders are not given special treatment in accordance with the law but instead have the same terms and conditions of confinement as other offenders, the imposition of a sentence which tends to be longer on youth offenders raises a potential stumbling block of constitutional dimension." *Watts v. Hadden*, 651 F.2d 1354, 1365 (10th Cir. 1981); *United States v. Town*, 537 F.2d 661, 664 (2d Cir. 1976); *United States v. Lowery*, 484 F.2d 457, 458 (3d Cir. 1973). We continue to hold that the language and history of the Act make clear that its purpose is to rehabilitate through treatment and segregation of youthful offenders.

Nonetheless, we are aware, as Hudson urges here, that the Act has not been implemented in accordance with the express intent of Congress. *See Watts v. Hadden*, 651 F.2d 1354 (10th Cir. 1981); *United States ex rel. Dancy v. Arnold*, 572 F.2d 107 (3d Cir. 1978); *Johnson v. Bell*, 487 F.Supp. 977 (E.D.Mich.1980); *Brown v. Carlson*, 431 F.Supp. 755 (W.D.Wis.1977). Hudson claims that in light of this fact he should be granted habeas relief. It is conceded that the Bureau of Prisons has not complied with the spirit of the Act. We are informed, however, that in response to court decisions in *Watts v. Hadden*, 469 F.Supp. 223 (D.Col.1979), aff'd 651 F.2d 1354 (10th Cir. 1981), and *Johnson v. Bell*, 487 F.Supp. 977 (E.D.Mich.1980), the nature of incarceration under the YCA has been substantially altered. The Bureau of Prisons has come forth with a plan to implement the YCA concepts as envisioned by the Congress and interpreted by the courts in *Watts v. Had-*

---

4. The Court noted that lower courts have consistently rejected arguments that the Bureau of Prisons may disregard the obligations under § 5011. It further noted that there is disagreement over the "degree of the flexibility" the Bureau possesses in complying with the segregation requirement arising from the requirement in § 5011 that certain obligations be discharged "insofar as practical." Citing *Watts v. Hadden*, 651 F.2d 1354 (10th Cir. 1981); *Outing v. Bell*, 632 F.2d 1144 (4th Cir. 1980), cert. denied sub nom. *Outing v. Smith*, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 203 (1981); *United States ex rel. Dancy v. Arnold*, 572 F.2d 107 (3d Cir. 1978); *Harvin v. United States*, 445

F.2d 675 (D.C.Cir.), cert. denied, 404 U.S. 943, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971); *Brown v. Carlson*, 431 F.Supp. 755 (W.D.Wis.1977); *Johnson v. Bell*, 487 F.Supp. 977 (E.D.Mich. 1980). We are not concerned in this case with the application of the practicality exception and therefore do not address it.

5. *Accord, Abernathy v. United States*, 418 F.2d 288, 290 (5th Cir. 1969); *Johnson v. United States*, 374 F.2d 966, 967 (4th Cir. 1967); *Brisco v. United States*, 368 F.2d 214, 215 (3d Cir. 1966); *Eller v. United States*, 327 F.2d 639 (9th Cir. 1964); *Rogers v. United States*, 326 F.2d 56, 57 (10th Cir. 1963).

*den.* The implementation of the plan is scheduled to be completed by April 1, 1982. Briefly, under this plan YCA offenders will be: (1) totally segregated from non-YCA offenders, (2) screened, evaluated and then classified for individual treatment programs, and (3) provided educational and vocational training. We commend the Bureau of Prisons for its efforts and strongly encourage it to implement diligently the policies of the YCA.

In the presence of these circumstances, while we agree that Hudson is not presently deriving the benefits Congress envisioned when enacting the YCA, we conclude that habeas relief is not the proper remedy. Rather, we think the mandated plan to implement the Act is the appropriate remedy and we assume the plan will be implemented without undue delay.

■ Hudson also claims that his guilty plea was not entered knowingly and voluntarily because he was not fully informed of all the sentencing possibilities under the YCA. This claim is not supported by the record.

The district court fully complied with the requirements of Fed.R.Crim.P. 11 when it accepted the plea. Before accepting Hudson's plea the court carefully examined him at some length regarding his understanding of the charges and the possible penalties, the nature and extent of the rights he was waiving, the voluntariness of his action, and the factual basis for the plea. *See McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). The consequences of being sentenced under the YCA were explained in great detail, and Hudson indicated that he understood. Against this background, we are persuaded that the plea was entered knowingly and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); *Brown v. Swenson*, 487 F.2d 1236, 1240 (8th Cir. 1973), *cert. denied*, 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974).

We have carefully considered Hudson's other allegations of ineffective assistance of counsel and improper denial of appointed counsel at the § 2255 hearing, and find them to be without merit.

Accordingly, for the reasons stated above, we affirm the judgment of the district court.