UNITED STATES of America, Appellee,

v.

Keith VAN LUFKINS, a/k/a Keith Lufkins, Appellant.

No. 81–2026.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1982.

Decided April 30, 1982.

Philip N. Hogen, U. S. Atty., Raymond P. Murley, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Jerald M. McNeary, McNeary & Moen, Aberdeen, S. D., for appellant.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and HENLEY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Keith Van Lufkins appeals his conviction of assault by striking, beating, or wounding and the sentence imposed by the district court [1] utilizing the Federal Youth Corrections Act.

Lufkins was convicted of kicking the victim, Raymond Bear, in the head. Both Lufkins and Bear were inmates at a Sioux tribal jail at the time of the incident; Lufkins was serving a ninety-day sentence for theft and Bear was serving a ten-day sentence for driving while intoxicated. The incident occurred on or about April 1, 1980. Bear, who had a steel plate in his head, was hospitalized for an examination but was returned to the jail. Bear completed his sentence on April 7, 1980.

Bear described the incident with Lufkins on at least two occasions. The first was in a conversation with his sister, Marie Bear, while he was still in the tribal jail. Marie Bear was able to talk with her brother because she worked at the jail as a dispatcher for the tribal police. The second description came on October 27, 1980, when an agent from the Federal Bureau of Investigation interviewed Raymond Bear.

Charges had been brought against Lufkins by tribal police on April 8, 1980. The FBI interviewed Lufkins on May 26, 1980, at the tribal jail where he was still serving his theft sentence. Lufkins confessed at this interview.

On January 7, 1981, a federal indictment was filed, charging Lufkins with assaulting Raymond Bear with a dangerous weapon, that is, shod feet, with intent to do bodily harm in violation of 18 U.S.C. §§ 1153 and 113(c) (1976). The court rejected an attempted plea bargain reached by the parties. Bear died in August 1981 of apparently unrelated causes. Lufkins was tried before a jury, and on September 9, 1981, the jury found Lufkins not guilty of assault with a dangerous weapon, but it found him guilty of the lesser included offense of assault by striking, beating, or wounding.

During the trial, Marie Bear and the FBI agent testified as to Raymond Bear's description of the incident. The essence of their testimony was that Bear described Lufkins's assault on Bear as unjustified. The FBI agent also testified as to the incriminating statements Lufkins made to the agent. A hearing was held on the admissibility of the agent's and Marie Bear's testimony.

The district court committed Lufkins, who was then nineteen, to the custody of the Attorney General for a period not to exceed six years, pursuant to 18 U.S.C. §§ 5010(b), 5017(c) (1976) in the Federal Youth Corrections Act. Lufkins now appeals, objecting both to the conviction and the sentence.

Lufkins raises four points on appeal. The first is that the district court erred in admitting the hearsay statements made by Bear to his sister and the FBI agent. The statements were admitted under Fed.R. Evid. 804(b)(5). Rule 804(b) provides for specific exceptions to the hearsay rule, and subsection 5 provides a general exception for: "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness." Lufkins argues that Bear's statements to his sister and to the FBI agent do not have circumstantial guarantees of trustworthiness equivalent to the guarantees of trustworthiness in the four specific exceptions. The specific exceptions are for former testimony, statements made under belief of impending death, state-

---

1. The Honorable Donald J. Porter, United States District Judge, District of South Dakota.

ments against interest, and statements of personal or family history.[2]

The district court determined that Bear's statements were reliable. It found that Marie Bear's testimony was admissible because Raymond Bear made his statement to her shortly after the incident and it was a fortuitous circumstance that caused Marie and Raymond to be at the same place. Trial Transcript at 91. The court concluded that Raymond Bear's statement to the FBI agent was sufficiently trustworthy because it was corroborated by other evidence. *Id.* at 122.

■ The district court has wide discretion in determining the trustworthiness of a statement for purposes of Rule 804(b)(5). *United States v. Carlson,* 547 F.2d 1346, 1354 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). The court's conclusions are supported by the record, so we affirm its decision to admit the statements.

Lufkins also objects to the FBI agent's testifying as to Lufkins's incriminating statements. Lufkins argues that 18 U.S.C. § 3501(c) (1976) allows confessions to be admitted only if they were made within six hours after arrest or detention. Section 3501(c) reads:

In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

Lufkins confessed to the FBI on May 27, 1980, forty-nine days after charges were brought against him by tribal police. He argues that this delay, in excess of six hours, violates § 3501(c).

■ Our reading of § 3501(c) and its legislative history leads us to conclude that the six-hour time period for obtaining a confession is not applicable in this case. Congress enacted § 3501(c) with the intention of offsetting the effects of *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2124. The Court in *Mallory* held that a confession was inadmis-

---

2. Fed.R.Evid. 804(b) reads in part:

Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. . . .

(2) Statement under belief of impending death. . . .

(3) Statement against interest. . . . .

(4) Statement of personal or family history. . . . .

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

sible if there had been an unnecessary delay in bringing the suspect before a magistrate. The rationale was to insure that persons are detained only for probable cause and not held for mere suspicion and subjected to the "third degree." 354 U.S. at 453, 454, 77 S.Ct. at 1358, 1359. Section 3501(c) allows a confession to be admitted, even if there is a delay in bringing the suspect before a magistrate, if certain conditions are met. Those conditions are that the trial judge must find the confession voluntary, the weight to be given the confession must be left to the jury, and the confession must be made within six hours after arrest or detention. Voluntariness, rather than delay, is the key factor. *See* 1968 U.S.Code Cong. & Ad. News at 2127, 2176.

█ The concern expressed by the Supreme Court in *Mallory*, subjecting a suspect to the third degree when there is no probable cause for detention, does not come into play in the instant case. The FBI's questioning or its delay in questioning Lufkins did not cause Lufkins to be detained. In enacting § 3501(c), Congress was concerned with the situation where a person is questioned for some time after an arrest rather than taken to a magistrate. Congress wanted to insure that confessions elicited during this questioning would be admissible. Lufkins's reading of § 3501(c) would require us to believe that Congress enacted that section to encourage prompt federal interrogation of suspects arrested by nonfederal authorities.[3] Nothing in the legislative history suggests that this was Congress's concern.

█ Furthermore, the language of § 3501(c) supports our construction. Although the section refers to a confession made in the custody of "any law-enforcement officer or law-enforcement agency," it also states that "the time limitation contained in this subsection shall not apply in any case in which *the delay in bringing such person before such magistrate* or other offi-

cer beyond such six-hour period" is reasonable. (Emphasis added.) This language shows that the six-hour time limit is intended to apply to situations where the suspect needs to be brought before a magistrate. Since Lufkins had not been charged by federal authorities, there was no need to bring him before a magistrate, and therefore the six-hour limit was not applicable.

█ Finally, § 3501 does not make a confession obtained after the six hours has run automatically inadmissible. Rather, it merely prohibits exclusion of a confession obtained within six hours solely because of delay. *United States v. Keeble*, 459 F.2d 757, 761 (8th Cir. 1972), *rev'd on other grounds*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

█ Lufkins's third objection goes to his sentence. He argues that his Youth Corrections Act (YCA) sentence of six years violates constitutional due process and equal protection guarantees in light of the fact that if he had not been subject to the YCA, his sentence could have been only six months in prison and a $500 fine. *See* 18 U.S.C. §§ 113(d), 5037(b) (1976). Lufkins concedes that courts have allowed longer sentences for YCA offenders because the purpose of the custody was rehabilitation rather than punishment. *Foston v. United States*, 389 F.2d 86, 87 and n.2 (8th Cir.), *cert. denied*, 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401 (1968). Lufkins contends that under the current policies of the Bureau of Prisons and the Federal Parole Commission, YCA offenders are treated no differently than other offenders.

This circuit has recently examined Bureau of Prison policies regarding the YCA. The court observed that even though the spirit of the Act has not been followed in part, the Bureau of Prisons is implementing a plan to segregate and rehabilitate YCA offenders. The court concluded that in light of implementation of the plan, the

---

**3.** We are not faced with the issue of whether the six hour time period would run from the beginning of federal detention on an unrelated charge.

appellant's detention in that case was not unconstitutional. *United States v. Hudson*, 667 F.2d 767, 771 (8th Cir. 1982). With the implementation of the Bureau's plan described in *Hudson*, Lufkins's confinement is not unconstitutional.

■ Lufkins's final argument is that his sentence violates a provision of the Federal Magistrates Act of 1979, 18 U.S.C. § 3401(g)(1) (Supp. III 1979), which prohibits a magistrate from sentencing a youth offender to more than one year for a misdemeanor.[4] Lufkins was sentenced by a district judge, but he contends that § 3401(g) applies to district judges as well as magistrates. Lufkins relies on a Ninth Circuit case, *United States v. Amidon*, 627 F.2d 1023 (9th Cir. 1980). We reject *Amidon* for four reasons. First, the plain language of § 3401(g) refers only to magistrates, not district judges. Second, the suggestion in the legislative history that YCA offenders could not serve longer sentences than adult offenders, H.Conf.R.No.444, 96th Cong., 1st Sess. 9–10, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1487, 1490, is refuted by other parts of the legislative history. Section 3401(g)(1) *expanded* the authority of magistrates. It made clear that magistrates have the power to sentence young offenders under the YCA. S.Rep.No.74, 96th Cong., 1st Sess. 7, 17, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1469, 1475–76, 1485. It is reasonable to assume that in increasing the authority of magistrates, Congress did not want to make the power of magistrates commensurate with that of district judges.

■ Third, *Amidon*'s construction of § 3401(g)(1) would implicitly repeal §§ 5010(b) and 5017(c). Repeals by implication are not favored. *Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Commission*, 393 U.S. 186, 193, 89 S.Ct. 354, 358, 21 L.Ed.2d 334 (1968).

Such repeals are appropriate when a later statute is clearly inconsistent with an earlier one, *United States v. Yuginovich*, 256 U.S. 450, 463, 41 S.Ct. 551, 553, 65 L.Ed. 1043 (1921), and even then, a court should imply repeal to the minimum extent necessary to make the statutes work. *See Gordon v. New York Stock Exchange*, 422 U.S. 659, 685, 95 S.Ct. 2598, 2612, 45 L.Ed.2d 463 (1975). The Federal Magistrates Act and the YCA are not inconsistent as applied to sentencing by a district judge, so we will not imply repeal. The more reasonable assumption is that if Congress had intended to repeal the sentencing portion of the YCA, it would have amended the YCA rather than merely enact the Federal Magistrate Act.

Fourth, the underlying assumption of *Amidon* is that the federal government has abandoned the rehabilitative purposes of the YCA and it is "inequitable and unjust" to impose longer YCA sentences. 627 F.2d at 1026. However, as this court stated in *Hudson*, the Bureau of Prisons is implementing a plan to make YCA detention rehabilitative. 667 F.2d at 771. Because the *Amidon* court's understanding of the Government's intent regarding YCA offenders has turned out to be erroneous, the court's reading of the congressional intent is suspect.

For the foregoing reasons, the conviction and sentence of Lufkins are affirmed.

---

4. Section 3401(g) reads in pertinent part: "(1) the magistrate may not sentence the youth offender to the custody of the Attorney General pursuant to such chapter for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense[.]"