UNITED STATES of America

v.

Jerome F. DONELSON, Appellant.

UNITED STATES of America

v.

Andre WASHINGTON, Appellant.

Nos. 81–2118, 82–1133.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 1, 1982.

Decided Dec. 7, 1982.

Bobby R. Burchfield, Washington, D.C. (appointed by this court) for appellants in Nos. 81–2118 and 82–1133.

Diane K. Dildine, Washington, D.C. (appointed by this court) was on the brief, for appellant in No. 82–1133.

Michael L. Rankin, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed. E. Anne McKinsey and Daniel J. Bernstein, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee. Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before TAMM, Circuit Judge, SCALIA, Circuit Judge, and GASCH,* District Judge for the United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

In the separate and unrelated prosecutions giving rise to these consolidated appeals, both appellants were charged, in the second count of two-count indictments, with possession of heroin, under D.C.Code § 33–502 (1981), punishable as a misdemeanor under D.C.Code § 33–524(a). Appellant Donelson was charged in the first count with the felony of possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1) (1976); as a result of plea negotiations, that count was dismissed and he pleaded guilty to the misdemeanor. Appellant Washington was charged in the first count with the felony of distributing a controlled substance (heroin), 21 U.S.C. § 841(a)(1); the jury acquitted him of that charge but found him guilty of the misdemeanor.

Both appellants, who were under the age of 22 at the time of their convictions, were sentenced by the District Court to custody of the Attorney General for treatment and supervision pursuant to § 5010(b) of the Federal Youth Corrections Act, 18 U.S.C. §§ 5001–5024 (1976). By its terms, the Youth Corrections Act permits custody at security institutions to continue for as long as four years from the date of conviction and authorizes an additional two years of release which is only conditional, subject to revocation for violation of the terms of supervision. 18 U.S.C. §§ 5017(c), 5020.[1] Appellants have thus been subjected to the possibility of confinement and of subsequent supervisory restraint for periods far exceeding the one year which would have been the maximum sentence imposable upon an adult for the offenses of which they have been convicted. See D.C.Code § 33–524(a). They urge that this is (A) contrary to what Congress has prescribed and (B) an unconstitutional denial of equal protection of the law. We disagree and affirm the judgments of the District Court.

(A)  The Statutory Claim

Appellants argue that the relevant provisions of the Youth Corrections Act should not be interpreted to permit a youth to be held for a term longer than an adult could receive for the same offense. That position was rejected by this court in *Carter v. United States,* 113 U.S.App.D.C. 123, 306 F.2d 283 (1962). There, we found no reason to equate the length of a Youth Corrections Act sentence with the length of an ordinary criminal sentence, because of its different purpose (its "basic theory . . . is rehabilitative") and effect (the "conditions and terms" of confinement are different "than a defendant would undergo in an ordinary

---

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

1. Under the Act, the precise length of confinement and conditional release is not specified by the court but is determined by the United States Parole Commission, which may accord conditional release at any time and unconditional release after one year of conditional release. 18 U.S.C. § 5017(a), (b).

prison").[2] *Id.* at 125, 306 F.2d at 285. And we found sentences of potentially greater length than ordinary criminal sentences permitted by "the clear language of the Act." *Id.* We have adhered to that interpretation in later opinions. *See, e.g., Harvin v. United States,* 144 U.S.App.D.C. 199, 445 F.2d 675 (en banc), *cert. denied,* 404 U.S. 943, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971); *United States v. Fort,* 143 U.S.App. D.C. 255, 272, 443 F.2d 670, 687 (1970), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2255, 29 L.Ed.2d 710 (1971).

■ Appellants contend, however, that the statutory situation has been changed by the Federal Magistrates Act of 1979, Pub.L. No. 96–82, 93 Stat. 645 (codified as amended at 18 U.S.C. § 3401 (Supp. III 1979)). We will treat this argument at greater length than we would normally think it requires, because it has been accepted by recent decisions of two other courts. *See United States v. Hunt,* 661 F.2d 72 (6th Cir.1981); *United States v. Amidon,* 627 F.2d 1023 (9th Cir.1980).

Appellants rely upon that provision of the Federal Magistrates Act which added the following subsection (g) to 18 U.S.C. § 3401:

> (g) The magistrate may, in a case involving a youth offender in which consent to trial before a magistrate has been filed under subsection (b) of this section, impose sentence and exercise the other powers granted to the district court under chapter 402 and section 4216 of this title, except that—
>> (1) the magistrate may not sentence the youth offender to the custody of the Attorney General pursuant to such chapter for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense;
>> (2) such youth offender shall be released conditionally under supervision no later than 3 months before the expiration of the term imposed by the magistrate, and shall be discharged uncon-

ditionally on or before the expiration of the maximum sentence imposed; and
(3) the magistrate may not suspend the imposition of sentence and place the youth offender on probation for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense.

18 U.S.C. § 3401(g) (Supp. III 1979). This provision could conceivably alter the application of the Youth Corrections Act which we announced in *Carter* in either of two ways. Since it is unclear precisely which is relied upon by appellants, we will discuss each in turn.

*Statutory Amendment*

First, the later legislation might amend the earlier. Such amendment can be achieved either (a) explicitly, or (b) impliedly, through the enactment of provisions that are incompatible with subsistence of the prior scheme. The latter is not the case here since, as will be evident from our discussion of the constitutional claim below, limitation of sentencing authority for magistrates is not inconsistent with retention of broader sentencing authority for district judges. As for explicit amendment, this simply cannot be supported by the statutory text. The new subsection 3401(g), like the rest of the Federal Magistrates Act of 1979, deals with the powers of magistrates and limitations upon those powers. There is no way it can be interpreted to restrict the powers of district judges, under the Youth Corrections Act or any other legislation. In fact, insofar as the new subsection speaks to the power of district judges to impose longer sentences under the Youth Corrections Act, it implicitly *confirms* that power—by providing that magistrates have the same power as district judges, "except that" they are limited to sentences of the specified duration.

Appellants, and the cases upon which they rely, place great weight upon the following excerpt from the Conference Report on the 1979 legislation:

---

**2.** We might also have noted in this regard that the service of a Youth Corrections Act sentence

brings with it the possibility of expungement of the criminal conviction. *See* 18 U.S.C. § 5021.

The Senate bill and House amendment thereto both contained provisions setting forth the reach of magistrate sentencing powers under the Youth Corrections Act. The conferees agreed that a more detailed statutory clarification was necessary. To avoid the possibility of a youth offender being punished for up to six years for violation of a petty offense or misdemeanor, the conferees resolved that no youth offender could serve a longer sentence under the YCA than he could have served as an adult. This mandate—no more than one year for conviction of a misdemeanor or six months for conviction of a petty offense—explicitly is set forth in the conference substitute.

H.Conf.Rep. No. 444, 96th Cong., 1st Sess. 9–10, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1469, 1490. It must be noted, to begin with, that even if the mandate of the statute were extended to district judges, it would not have the effect described in this excerpt of assuring that "no youth offender could serve a longer sentence under the YCA than he could have served as an adult." Where the offense is a misdemeanor punishable by less than one year, or a petty offense punishable by less than six months, the text of the statute clearly authorizes a Youth Corrections Act sentence that exceeds the permissible adult term. *See* 18 U.S.C. §§ 1, 3401(g)(1). In other words, even in its application to magistrates alone, this portion of the Conference Report is in error.[3]

In any case, the language in question, while in isolation susceptible of the broader interpretation appellants would give it,

seems to us more reasonably understood, in context, as addressing only the subject matter of the legislation under discussion. That is to say, the underscored language must reasonably be implied in the third sentence:

To avoid the possibility of a young offender being punished *by a magistrate* for up to six years for violation of a petty offense or misdemeanor, the conferees resolved that no youth offender *sentenced by a magistrate* could serve a longer sentence under the YCA than he could have served as an adult.

This interpretation is not only more in accord with the statutory text which the statement purports to describe; it is also the only interpretation compatible with the remainder of the legislative history, which displays no concern for general revision of Youth Corrections Act sentencing, but rather concern for reconciling magistrates' ability to sentence under that Act with the then-existing, one-year limitation upon their sentencing authority.[4] As the Senate Report stated,

There is doubt at the present time as to whether a magistrate may preside over a case otherwise within his jurisdiction when [a juvenile or other youthful offender] is involved .... [T]he bill ... clarifies magistrates' authority in this area.

S.Rep. No. 74, 96th Cong., 1st Sess. § 7, *reprinted in* 1979 U.S.Code Cong. & Ad. News 1469, 1475–76. The House Report was even more explicit:

Under the terms of [the Youth Corrections] Act, a petty offender found guilty

---

**3.** In interpreting the statute we would not be justified, of course, in making the legislative history correct at the expense of making the plain language of the law itself inaccurate. As our subsequent discussion will show, there is a rational explanation supported by other portions of the legislative history for the course which the statute adopts. Moreover, the Senate bill, which on this point was rejected in favor of the House bill, *did* limit magistrates' sentencing authority under the Youth Corrections Act to the term provided for adults. *Compare* H.R. 1046, 96th Cong., 1st Sess. § 7(3) (1979) *with* S.237, 96th Cong., 1st Sess. § 7(3) (1979).

**4.** 18 U.S.C. § 3401(a) (1976) authorized magistrates to try and sentence persons accused of "minor offenses"; and 18 U.S.C. § 3401(f) (1976) defined "minor offenses" as misdemeanors "the penalty for which does not exceed imprisonment for a period of one year, or a fine of not more than $1,000, or both ...." The 1979 legislation eliminated the $1,000 limitation, by giving magistrates authority to try all misdemeanors. 18 U.S.C. § 3401(a) (Supp. III 1979).

of an offense punishable by up to six months incarceration could, in theory, be committed for treatment up to six years. This has been construed to mean that the youthful offender cannot be sentenced under the Act by a magistrate. This impediment is eliminated by language which clearly indicates that a magistrate may impose sentence under the YCA but cannot impose a term of imprisonment which extends beyond the maximum term that could be imposed on an adult convicted of the same offense. This avoids the possibility of an individual serving a longer sentence under the YCA than he would have served if sentenced as an adult.[5]

H.R.Rep. No. 287, 96th Cong., 1st Sess. 18–19 (1979). Thus, what is inaccurately described as the restriction of sentencing authority to the adult term was viewed not as an end in itself, but as a means of either placing beyond question the magistrates' authority to proceed under the Youth Corrections Act or of assuring continuation of the general one-year limitation upon their sentencing authority. It would be remarkable for the Conference Committee to expand this to general revision of the Youth Corrections Act itself—and indeed such expansion would appear to violate the rules of both Houses governing conference committees. See Rule XXVIII, Art. 3, Rules of the House of Representatives (1979); Rule XXVIII, Art. 3(a), Standing Rules of the Senate (1979). We are persuaded, in any event, that the clear text of the statute, having no conceivable application to district court proceedings, cannot be overcome by what is, at best, an ambiguous piece of legislative history.

### Expression of Current Congressional Understanding

Much of what has been said above applies as well to the second way by which the new legislation might conceivably alter our holding in *Carter*—by providing evidence of Congress's current interpretation of the Youth Corrections Act. Such post-enactment interpretation, while not of course independently effective to change the prior law, is a factor that should be considered by the courts.

But the suggested interpretation of the Youth Corrections Act is no more to be found in the 1979 legislation than was the suggested amendment. The new subsection 3401(g) does not embody the principle that a Youth Corrections Act sentence imposed by a magistrate may not exceed the potential adult sentence for the same offense. Even if it did, there is nothing in the statute to suggest the assumption that a similar principle applies to Youth Corrections Act sentences generally; quite the contrary assumption is evident in the phrase "except that," and indeed in the entire enactment of a provision which would have been superfluous if *Carter* were assumed to be incorrect. Finally, the excerpt from the Conference Report, which at least provides ambiguous support for appellants' theory of statutory change, flatly contradicts the alternate theory of legislative assumption as to preexisting law; it clearly envisions a *change* in the law.

As noted above, our conclusion regarding the effect of the Federal Magistrates Act of 1979 is contrary to *United States v. Hunt*, 661 F.2d 72 (6th Cir.1981), and *United States v. Amidon*, 627 F.2d 1023 (9th Cir. 1980). We have carefully considered the opinions in those cases and do not find them persuasive.[6] We prefer instead to follow

---

**5.** The last sentence of this excerpt makes the same mistake as the Conference Report, since the House bill, like the statute as enacted, limited the magistrate not to the adult sentence but to one year for misdemeanors and to six months for other cases. *See* H.R. 1046, 96th Cong., 1st Sess. § 7(3) (1979). The confusion may have been attributable to a careless tracking of the Senate Report, which appeared several months earlier. That earlier report correctly described the Senate bill as prohibiting commitments by magistrates which "exceed the maximum term which could have been imposed upon an adult convicted of the same offense." S.Rep. No. 74, 96th Cong., 1st Sess. 17 (1979), U.S.Code Cong. & Admin.News 1979, 1469, 1485. *See also* S.237, 96th Cong., 1st Sess. § 7(3) (1979).

**6.** The *Hunt* case in particular bears overt evidence of its own error, since it happens to

the recent decisions of the District of Columbia Court of Appeals in *Tolson v. United States,* 448 A.2d 248 (D.C.App.1982), and of the Eighth Circuit in *United States v. Van Lufkins,* 676 F.2d 1189, 1194 (8th Cir.1982), both of which are in accord with our views expressed above.

### (B) The Equal Protection Claim

*Adult Offenders vs. Youthful Offenders*

■ Appellant Donelson presents two constitutional arguments. He first contends that the Youth Corrections Act, if interpreted as exposing youthful offenders to longer sentences than adult offenders, denies equal protection of the laws. The same claim was made and rejected in *Carter,* and we see no reason to depart from that decision. We find no basis for appellant's suggestion that the predicate of *Carter*—the "quid pro quo" of rehabilitative treatment—has disappeared.

Appellant cites *Watts v. Hadden,* 651 F.2d 1354 (10th Cir.1981), a habeas corpus action in which there was alleged and proved noncompliance by prison officials with the rehabilitative purposes of the Act. In our view that case, which ordered the Bureau of Prisons to comply with the special provisions of the Act, proves precisely the opposite of what appellant seeks to establish; it demonstrates the existence of enforceable rights to special treatment under the Act. The dictum to the contrary in *United States v. Ramirez,* 556 F.2d 909, 922–23 n. 21, *vacated on rehearing on other grounds,* 556 F.2d 925 (9th Cir.1976), is in conflict with all decisions on the subject as well as with the text of the statute itself. The case cited by appellant as invalidating New York's provision of longer sentences for youthful offenders, *Sero v. Preiser,* 506 F.2d 1115 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), is inapposite because it involved a

scheme in which, as the court found, neither the law nor the prison regulations provided unique treatment for those receiving the special sentences. Finally, the dicta in *United States v. Amidon,* 627 F.2d 1023, 1026 (9th Cir.1980), to support the proposition that "the original rehabilitative purposes of the YCA have generally been abandoned," were meant to provide an explanation for the amendment which that court found Congress had made; there was no assertion of a massive failure of administration sufficient in and of itself to invalidate the legislative scheme on equal protection grounds. Nor are we able to find such a failure on the basis of the evidence proffered in the present case.

In sum, we adhere to our view in *United States v. Hopkins,* 174 U.S.App.D.C. 244, 252 n. 51, 531 F.2d 576, 585 n. 51 (1976):

> *[D]espite* the validity of criticism of the rehabilitative movement in penology, the FYCA nevertheless embodies the will of Congress to opt for providing rehabilitative opportunities for young offenders .... [T]here is no justification for negating the avowed intent of the Congress that passed this comprehensive statutory scheme ....

*Youthful Offenders Sentenced by Magistrates vs. Youthful Offenders Sentenced by District Judges*

■ Appellant Donelson raises a new equal protection claim assertedly created by the Federal Magistrates Act of 1979, if it is interpreted as we have set forth above. This claim focuses not upon the disparity between the sentencing of youthful offenders under the Youth Corrections Act and the sentencing of adult offenders who have committed like offenses; but rather upon the disparity between the sentencing of two youthful offenders under the Act for the same misdemeanor offense, one of whom is

---

involve a petty offense for which the maximum incarceration permitted in adult sentencing is not the petty offense maximum of six months, but only three months. *See* 18 U.S.C. § 113(e) (simple assault). The court held that "the district court could not have sentenced the defendant to more than *three* months in prison under

the Youth Corrections Act ...." 661 F.2d at 76 (emphasis added). It rested this conclusion upon a statute which limits the maximum Youth Corrections Act sentence imposable by a magistrate to "*six* months for conviction of a petty offense." 18 U.S.C. § 3401(g) (emphasis added).

sentenced by a magistrate (and thus exposed to a maximum of no more than one year's incarceration) and the other of whom is sentenced by a district judge (and thus exposed to a maximum of six years' incarceration).[7]

Once the youthful offenders are before the divergent sentencing officials (magistrate and district judge), it is difficult to say that they are "similarly situated" and thus must be exposed to similar sentencing. The offender appearing before the magistrate is in the hands of an official presumably less expert and less independent, so it is entirely reasonable that the sentence which can be meted out be less severe. Appellants may properly argue, however, that equal protection furthermore demands some

reason *why* the two individuals have been brought before different forums to begin with. We think the structure of the statute and the implementing regulations assure such reasoned distinction. All cases involving exclusively misdemeanors are initially assigned to magistrates,[8] and remain there unless the defendant does not consent to that jurisdiction, see 18 U.S.C. § 3401(b), or unless the district court removes the case, either on its own motion or on petition of the Government in accordance with regulations promulgated by the Attorney General. See 18 U.S.C. § 3401(f).[9] The present cases were filed initially in the district court because the misdemeanor count was joined with a related felony offense. We consider this a necessarily implied exception to the

---

**7.** Our discussion will assume that a magistrate who, after trial and judgment, believes the case requires a Youth Corrections Act sentence in excess of that which he is authorized to impose, cannot refer the case to the district court for sentencing purposes alone. We find it unnecessary to determine the correctness of that assumption in the present case, but 18 U.S.C. § 3401(b) seems to favor such an interpretation. By requiring the defendant to file a written waiver of "trial, judgment, and sentencing by a judge of the district court," it appears to contemplate that all aspects of the proceeding will be handled by the same official.

**8.** While the statute merely provides that the magistrate "shall have jurisdiction," 18 U.S.C. § 3401(a), we interpret this to mean that the jurisdiction shall be exclusive of the (nonsupervisory) jurisdiction of the district court, unless supplanted in the manner the statute specifically provides. Even before the 1979 amendments, a district court had held (perhaps erroneously) that a misdemeanor defendant brought initially before a district judge had a right to demand trial by a magistrate. *See United States v. Hamilton,* 60 F.R.D. 192 (W.D. Tenn.1973). The 1979 amendments made it clear that trial before magistrates was to be the general rule by revising § 3401(a) and by adding the present § 3401(f) specifying the procedures for case-by-case removal to district judges. Section 3401(a) was revised to eliminate the bracketed language:

When specially designated to exercise such jurisdiction by the district court or courts he serves, [and under such conditions as may be imposed by the terms of the special designation,] any United States magistrate shall have jurisdiction to try persons accused of, and sentence persons convicted of, minor offenses committed within that judicial district.

The House Report describes the intended effect of this change as follows:

The language of new subsection (a) would not permit specification by the district court of only particular categories of cases for magistrate determination. As noted herein under section 2 of the Act the committee strongly feels that certain kinds of cases, perhaps less attractive to the district court for a variety of reasons, should not routinely, to the exclusions [sic] of other cases, be given to magistrates. Categorization would affect litigants' perceptions of the quality of magistrate justice, as well as serve perhaps as an impediment to the recruiting of high-quality magistrate appointments.

H.R.Rep. No. 287, 96th Cong., 1st Sess. 17–18 (1979). The Senate bill made a similar change. *See* S.237, 96th Cong., 1st Sess. 5–6 (1979).

**9.** This provision specifies "novelty, importance, or complexity of the case" as factors that may constitute "good cause" for purposes of the Government's petition—and hence, presumably, for purposes of the court's *sua sponte* removal—and acknowledges the existence of "other pertinent factors." Additional factors specified by the Attorney General's regulations, 28 C.F.R. § 52.02(b)(1)(A)–(F) (1980), include "the potential penalty upon conviction," *id.* at § 52.02(b)(1)(C). It might be argued that this renders our present analysis circular, since it may imply that the desire for a longer sentence alone will justify application for removal to district court. However, this provision governs only the application and not the district court's consideration of it; and it in any event would not produce a haphazard, unreasoning removal but rather one based on assessment of the needs of the particular case.

statute's general rule that misdemeanors be referred initially to magistrates. In any event, the district court has authority not only to remove misdemeanor cases *from* the jurisdiction of magistrates, but to refer misdemeanor cases brought before it *to* that jurisdiction. *See* 28 U.S.C. § 636(b)(3). It thus appears that no misdemeanor case can remain before a district judge without affording the defendant an opportunity for a determination by that forum that, in the circumstances of that particular case, there are special reasons for such jurisdiction.

It may be noted that our system of military justice has contained for many years, without any constitutional challenge of which we are aware, a system of alternate forums to try the same penal offense, with varying sentencing authority. The Uniform Code of Military Justice, 10 U.S.C. §§ 801–940 (1976), permits many offenses to be tried either before a general court martial or before a less prestigious special court martial whose available penalties are more limited. *See* 10 U.S.C. §§ 818–819. That long-standing system[10] is even less solicitous of the alleged "right" to be tried before the more lenient forum, since the selection (which may be made with specific reference to the punishment that can be imposed) is entirely within the discretion of the convening authority. *See* 10 U.S.C. §§ 822–823.

We therefore do not discern, in the general structure of this system of criminal trial and sentencing before magistrates, any denial of equal protection. That conclusion is even clearer if we consider the particular situation of these appellants. Both were prosecuted for felonies related to the misdemeanor offense. Appellant Washington was acquitted of the felony. It is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted. *See, e.g., United States v. Morgan,* 595 F.2d 1134, 1136–37 (9th Cir.1979); *United States*

*v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir. 1977); *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976). It can hardly be a denial of equal protection, therefore, for a defendant in appellant Washington's position to be subjected to the possibility of a sentence greater than that which could be imposed upon one who is charged of and tried for a misdemeanor alone. Appellant Donelson would be in precisely the same position (at best), but for the fact that he entered into a plea bargain in district court, whereby the felony count was dismissed. He is now seeking, in effect, to improve the bargain by demanding that the case be transferred to a magistrate. We do not believe that either the equal protection clause or a sound exercise of the district court's discretion requires such a result. A misdemeanor conviction resulting from the negotiated dismissal of a felony count may reasonably be subjected to the possibility of a harsher sentence than a misdemeanor conviction standing alone.

Our decision on this aspect of the case is strongly supported by the opinion of the Second Circuit in *Drayton v. New York,* 556 F.2d 644, *cert. denied,* 434 U.S. 958, 98 S.Ct. 488, 54 L.Ed.2d 317 (1977), upholding a state scheme which provided varying maximum penalties for the same misdemeanor offense, depending upon the court in which conviction was obtained.

■ Defendants eligible for Youth Corrections Act sentencing who are convicted in criminal proceedings before magistrates might argue that the threat of receiving a longer Youth Corrections Act sentence unconstitutionally coerced their waiver of right to trial before an Article III judge. *See United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). While such a constitutional claim is not available to the present appellants, we have considered it as bearing upon the interpretation we ought to give to the 1979 statute. *See United States v. Thompson,* 147 U.S. App.D.C. 1, 452 F.2d 1333 (1971), *cert. de-*

**10.** The current provisions of 10 U.S.C. §§ 818–819 are traceable to the Articles of War, ch.

227, 41 Stat. 789 (1920).

*nied,* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972). We have concluded that the claim is not substantial, since a similar allegation of unconstitutionally coerced waiver—not merely of the right to trial before an Article III judge, but of the right to any trial at all—has been rejected even when sentencing well in excess of one year was involved. *See Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1969).

For the reasons stated above, we uphold the sentences imposed on appellants Donelson and Washington by the District Court.

*Affirmed.*