UNITED STATES of America, Appellee,

v.

**George SNOW, Appellant.**

No. 84–6267.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1984.

Decided Nov. 29, 1984.

Sandra J. Hyldburg, Asheville, N.C. (Hyldburg, Grimes & Teich, Asheville, N.C., on brief), for appellant.

Samuel T. Currin, U.S. Atty., J. Douglas McCullough, Asst. U.S. Atty., Raleigh, N.C., Patty Merkamp Stemler, Dept. of Justice, Washington, D.C., on brief, for appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

I

George Snow ("Appellant") appeals from Judge Dupree's order of the United States District Court for the Eastern District of North Carolina denying appellant's motion,

pursuant to 28 U.S.C. § 2255, to vacate his sentence.

Following a jury trial on June 23, 1980, Snow was convicted of stealing a motorcycle from Fort Bragg Military Reservation in violation of 18 U.S.C. § 661 (a felony). Snow was 22 years old on the date of his conviction. Judge Dupree, in accordance with the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. § 5005–5026, sentenced the appellant to the custody of the Attorney General for an indeterminate sentence outlined in 18 U.S.C. §§ 5010(b) and 5017(c).[1] Snow was assigned to the Federal Corrections Institute at Englewood, Colorado.

After the appellant spent approximately 3½ years at the Englewood facility, he filed a *pro se* motion with the district court seeking to vacate, set aside or correct his sentence. In his petition Snow alleged, *inter alia,* that his incarceration under the FYCA was illegal since his "indeterminate sentence" could result in a six year term whereas the maximum term he could receive as an adult offender, under 18 U.S.C. § 661, would be only five years; Snow relied upon the Federal Magistrate Act of 1979, 18 U.S.C. § 3401(g) to demonstrate the illegality of his FYCA sentence. Snow also alleged that his imprisonment at the Englewood Facility violated the FYCA in that he was not receiving his prescribed counseling sessions. Judge Dupree found Snow's contentions completely devoid of merit and accordingly denied his motion on February 15, 1984. Snow filed a motion on April 16, 1984 seeking an extension of time

within which to notice his appeal. The motion was granted. Appellant filed a timely notice of appeal on May 11, 1984.

## II

On April 22, 1984 Snow was transferred from the corrections center in Englewood, Colorado to a halfway house in Raleigh, North Carolina. Sometime in May he was transferred again to a Community Treatment Center in Raleigh. On May 24, while his appeal was pending, Snow escaped from the treatment center.

On August 31, 1984, the United States ("Appellee") moved to dismiss Snow's appeal. At that time the government was under the impression that Snow was still a fugitive; thus the basis of the government's motion was that a fugitive cannot "call upon the resources of this court for determination of his claims." However the government (as well as the Court) has since learned that the appellant had, in fact, already been recaptured and returned to custody on June 12, 1984.

In spite of the fact that Snow is no longer a fugitive, and was not one at the time the motion to dismiss the appeal was filed, the Government continues to pursue its motion to dismiss. In essence, appellee argues that since the appellant escaped, while his appeal was pending, he abnegated all claim to justice, forfeiting any right to judicial redress for his claims. The contention is advanced that any subsequent recapture has had no bearing on Snow's initial and intentional errant behavior.

---

1. Technically, Snow did not qualify as a "youth offender" within the meaning of the FYCA since he was not *"under* the age of twenty-two years at the time of conviction." 18 U.S.C. § 5006(e) (emphasis added). However, an individual between the ages of 22–26 can be sentenced as a "youth offender" if the court deems that the individual will benefit from the therapeutic/rehabilitative treatment afforded by the Act. Strictly speaking, then, Snow is a "young adult offender," 18 U.S.C. § 4209, being sentenced as a "youth offender."

  18 U.S.C. § 5010(b) provides:

   If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable

provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5071(c) of this chapter.

18 U.S.C. § 5017(c) provides:

   A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

The Supreme Court has held that a court in its discretion need not adjudicate the merits of a criminal defendant's appeal if he has purposefully escaped from lawful custody. *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970). "While such an escape does not strip the case of its character as an adjudicable case or controversy" the Court noted that it "disentitles the defendant to call upon the resources of the Court for determination of his claims." *Id.* at 366, 90 S.Ct. at 498. Subsequent to *Molinaro* courts have exercised their discretion and have dismissed fugitives' appeals; however, the facts in the instant case do not fit neatly into any one of those decided cases. Dismissals have occurred when the fugitive has failed to return to custody within thirty days of a court order, *United States v. Sperling*, 506 F.2d 1323, 1345 n. 33 (2d Cir.1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), or within the time prescribed in a court order conditionally dismissing the prisoner's appeal, *United States v. Shelton*, 508 F.2d 797 (5th Cir.1975), *cert. denied*, 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975), or within two years of an escape, *United States v. Holmes*, 680 F.2d 1372 (11th Cir.1982), *cert. denied*, 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983).

In the instant case Snow did not voluntarily surrender. He was recaptured against his will. Alone, that fact militates against granting Snow a judicial forum where he can contest the terms and conditions of his sentence. However, since Snow was back in custody within less than thirty days from his escape, and before his appeal was to be heard, he never had an opportunity to comply with a court order requiring Snow to surrender and reinstate his claim. He never had an appeal pending which was conditioned on obedience to an order requiring Snow to return within thirty days or else suffer a dismissal, as did other defendants in sister cases who were still in escapee status when their cases were scheduled for argument. *See, e.g., Van Blaricom v. Forscht*, 490 F.2d 461 (5th Cir.1974), *cert. denied*, 423 U.S. 915, 96 S.Ct. 222, 46 L.Ed.2d 144 (1975) (prisoner's appeal will be reinstated if he returns to custody within thirty days of the issuance of the court order); *United States v. Eberhardt*, 467 F.2d 578 (5th Cir.1972) (prisoner's appeal removed from docket subject to reinstatement if he subjects himself to court's jurisdiction within thirty days).

■ Once an escapee flagrantly refuses to obey a court order to return to custody, knowing quite well his recalcitrance will cost him an appeal, it seems thoroughly reasonable to close the courthouse doors to his claim. But in the instant case, where the court had no need to flex its muscles and set up a time limit for Snow's surrender, inasmuch as Snow was already back in custody, it seems somewhat inequitable to dismiss his claim and in effect penalize Snow simply because the authorities found him so soon.[2] Furthermore, Snow's escape and subsequent recapture did not inconvenience the court's schedule. Oral argument was able to proceed as planned.

Given that Snow was back in custody within thirty days of his escape, the court has decided to exercise its discretion in favor of permitting the appeal to proceed. The government's motion to dismiss is denied.[3]

---

**2.** *See Barker v. Jones*, 668 F.2d 154, 155 (2d Cir.1982) ("When an appellant has been *returned* to the jurisdiction of the court before the appeal is dismissed ... he has not necessarily lost his rights; the per se dismissal rule does not apply.") (emphasis in original). The court specifically used the word *returned* and not surrendered. *See also Williams v. Holbrook*, 691 F.2d 3, 14–15 (1st Cir.1982) ("[A]lthough courts sometimes speak of an escapee's 'disentitlement' to post-trial review, they primarily have been concerned about deciding an appeal of a person not then in custody .... [B]ecause petitioner is presently in custody the court is not faced with a party in the position of opting in only if the result is favorable.").

**3.** The Court is not condoning Snow's flight from justice. However, it presumes his actions constitute an independent crime, *i.e.,* "escape from custody." We refrain from punishing Snow twice by dismissing his appeal.

## III

In 1979, Congress amended the Federal Magistrates Act, 18 U.S.C. § 3401 in order to expand the jurisdiction of magistrates. The amendments authorized magistrates to dispose of cases involving petty offenses and misdemeanors committed by both youth offenders and adults. However the authority given to magistrates to sentence youth offenders under the FYCA was not coextensive with the sentencing authority of district judges. Unlike district judges, who could on occasion sentence a youthful misdemeanant to an indeterminate sentence of up to six years,[4] magistrates were subjected to the following guidelines:

(g) The magistrate may, in a case involving a youth offender in which consent to trial before a magistrate has been filed under subsection (b) of this section, impose sentence and exercise the other powers granted to the district court under chapter 402 and section 4216 of this title, *except that —*

(1) the magistrate may not sentence the youth offender to the custody of the Attorney General pursuant to such chapter for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense;

(2) such youth offender shall be released conditionally under supervision no later than 3 months before the expiration of the term imposed by the magistrate, and shall be discharged unconditionally on or before the expiration of the maximum sentence imposed; and

(3) the magistrate may not suspend the imposition of sentence and place the youth offender on probation for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense.

18 U.S.C. § 3401(g) (emphasis added).

The appellant's argument progresses in two steps. First, appellant contends that the sentencing restrictions of 3401(g) with regard to misdemeanors and petty offenses are similarly applicable to district court judges. That is, both magistrates and district court judges should be disallowed from subjecting a youthful petty offender or misdemeanant to a longer sentence under the FYCA than he would otherwise receive as an adult. And second, Snow claims that the Federal Magistrates Act of 1979 should also be read as restricting district court judges from sentencing youthful *felons* to longer terms under the FYCA than they would otherwise receive as an adult offender. As an adult offender Snow would have been subjected to a possible maximum 5 year sentence. 18 U.S.C. § 661. As a young adult offender sentenced under the FYCA, he was subject to an indeterminate sentence of up to six years. Thus, based on his preferred expansion of the Federal Magistrates Act, Snow has argued that his sentence was illegal.

Appellant's reading of 3401(g) defies accepted canons of statutory construction and case law that has squarely addressed the issue. The first stage of Snow's argument, *i.e.,* that 3401(g) *implicitly* applies to district court judges as well as magistrates when sentencing misdemeanants and petty offenders under the FYCA, ignores the *explicit* language of the amendment. "The magistrate may ... exercise the other powers granted to the district court under section 402 and section 4216 of this title *except* ...." 18 U.S.C. § 3401(g) (emphasis added). If the Act meant to equate the district court's sentencing powers with those of a magistrate the word *"except"* would not have been included; on its face, 3401(g) sets up a disparity between the full breadth of authority exercised by district court judges and the more circumscribed discretion given to magistrates.

Furthermore, it seems highly unlikely that Congress would attempt to repeal the

---

**4.** A misdemeanant or felon could receive a longer sentence under the FYCA than if sentenced as an adult offender. That possibility exists because "once a person [is] committed for treatment under the Act, the execution of sentence was to fit the person, not the crime for which he [is] convicted." *Dorszynski v. United States,* 418 U.S. 424, 434, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974).

sentencing provisions under the FYCA, applicable to district court judges, by making amendments to the Federal Magistrates Act.[5] A far less circuitous and far more predictable and reasonable approach would have been to amend the FYCA itself. *See Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Commission*, 393 U.S. 186, 193, 89 S.Ct. 354, 358, 21 L.Ed.2d 334 (1968) ("repeals by implication are not favored"). While sometimes our work tempts us to allude to legislative drafting as cryptic or opaque, for the most part, it usually follows a course describable as "predictable" and "reasonable."

The majority of courts confronted with the issue of whether 3401(g) implicitly lessens the district court's power to sentence youthful misdemeanants and petty offenders under the FYCA have rejected it outright:

> [L]imitation of sentencing authority for magistrates is not inconsistent with retention of broader sentencing authority for district judges. As for explicit amendment, this simply cannot be supported by the statutory text. The new subsection 3401(g), like the rest of the Federal Magistrates Act of 1979, deals with the powers of magistrates and limitations upon those powers. There is no way it can be interpreted to restrict the powers of district judges, under the Youth Corrections Act or any other legislation.

*United States v. Donelson*, 695 F.2d 583, 585 (D.C.Cir.1982). *See also United States v. Van Lufkins*, 676 F.2d 1189, 1194 (8th Cir.1982) (the court expressly rejected the contention that district judges were in any way affected by 3401(g)).

It should be noted that one Ninth Circuit case, specifically criticized in *Donelson*, and

*Lufkins*, has accepted Snow's first level of analysis and found "it implicit in the Federal Magistrate Act of 1979 that Congress intended that neither a district court judge nor a magistrate may sentence a youth under the Youth Corrections Act to a term of confinement longer than it could impose on an adult." *United States v. Amidon*, 627 F.2d 1023, 1027 (9th Cir.1980). *Amidon* involved a misdemeanor and not a felony. The court in *Amidon* was influenced by particular legislative history involving the Federal Magistrate Act:

> To avoid the possibility of a youth offender being punished for up to six years for a violation of a petty offense or misdemeanor, the conferees resolved that *no youth offender could serve a longer sentence under the Youth Corrections Act than he could have served as an adult.* This mandate—no more than one year for conviction of a misdemeanor or six months for conviction of a petty offense—explicitly is set forth in the conference substitute.

House Conf.Rep. No. 96–444 at 9–10, [1979] U.S.Code Cong. & Admin.News, pp. 1469, 1490 (emphasis added).[6] Even if, based on the above quoted passage, one could plausibly argue that 3401(g) incorporates district judges, that argument would still only apply in regard to sentencing youthful offenders who have committed a misdemeanor or a petty offense. *Amidon* and the quoted legislative history, however, fail to buttress Snow's second level of analysis, *i.e.*, his assertion that 3401(g) by implication also limits the discretion of district judges when sentencing *felons* under the FYCA. In fact, the Ninth Circuit (after having decided *Amidon*) specifically rejected Snow's second argument and refused to extend *Amidon* to felony cases. *United States v. Lowery*, 726 F.2d 474, 476 (9th Cir.1983). The court in *Lowery* ac-

---

**5.** If Congress were to act in that unlikely way, it is almost certain that § 3401(g) would contain an explicit reference to district judges. Yet the section expressly restricts itself to enunciation of a rule limited to magistrates only.

**6.** Congress' statement is somewhat inaccurate in that even under 3401(g) misdemeanants and

petty offenders could be sentenced to terms under the FYCA that are longer than they would otherwise serve as an adult. *E.g.*, where a misdemeanor is punishable by less than one year or a petty offense is punishable by less than six months.

knowledged that other circuits found fault with the *Amidon* decision and went on to say:

> These cases, although rejecting the conclusion we reached in *Amidon*, properly indicate that the amendment of existing legislation should be implied from ambiguous language only to the extent necessary to make the statutory scheme work.... Because section 3401(g) does not create any incongruity with respect to YCA sentencing for felonies, we decline to extend our holding in *Amidon* to include felonies.

*Id.* at 477 (citations omitted).

Section 3401(g) consequently has nothing whatsoever to do with the disposition of felony cases. Yet Snow would have us make the quantum leap from the language of 3401(g)—a provision pertaining solely to magistrates' authority in regard to misdemeanors and petty offenses—to a sweeping repeal of the FYCA and its elaborate sentencing guidelines pertaining to district judges; according to Snow, the district judge's sole guidelines for sentencing petty offenders, misdemeanants *and felons* under the FYCA would be an *unwritten* directive contained in 3401(g).

Accordingly, the appellant's "indeterminate" sentence under 18 U.S.C. § 5010(b); 5017(c) has not violated the FYCA.

## IV

As previously mentioned, youth offenders or young adult offenders sentenced under the FYCA can receive a longer penal term than they would otherwise receive as an adult offender. Although many youth offenders have lodged constitutionally based claims alleging that their longer sentences under the FYCA denied them equal protection of the laws, such claims have been rejected on the sound ground that, while longer sentences under the FYCA were remotely possible, the practice was justified by the rehabilitative treatment afforded the youths and the resulting large probabilities of lesser incarceration:

A youth sentenced under 18 U.S.C. § 5010(b) or (c) of the YCA is committed to the custody of the Attorney General "for treatment and supervision." An examination of the legislative history surrounding the YCA indicates that Congress was primarily concerned with "substituting for retributive punishment methods of training and treatment" designed to promote the rehabilitation of those youthful offenders who showed promise of becoming useful citizens, thus avoiding the "degenerative and needless transformation of many of these young persons into habitual criminals."

*United States v. Hudson,* 667 F.2d 767, 769 (8th Cir.1982) (footnotes omitted).

Snow, however, proceeds to argue that the discrepancy in FYCA sentences and adult sentences does violate the equal protection clause when the detention center housing the youth reneges on its duty to provide the rehabilitative programs mandated by the Act. Although Snow's argument has some force,[7] it does not aid Snow in his present attempt to vacate his sentence under 18 U.S.C. § 2255.

Snow has alleged that his sentence under the Act is violative of the equal protection clause because the Englewood, Colorado facility failed to provide him with counselling sessions as prescribed by the FYCA—"rehabilitative" sessions which presumably justified the imposition of a longer sentence than an adult would otherwise receive. Given that Snow is contesting the *execution* of his sentence, the proper remedy would have been to file a habeas corpus proceeding in the district that has jurisdiction over his custodian, the Englewood Detention Center:

> Although a motion under Section 2255 may be utilized to attack a sentence which is "in excess of the maximum authorized by law," this refers only to the sentence as *imposed,* as distinct from the sentence as it is being *executed.* If appellant's sentence is being executed in a

---

7. *See Watts v. Hadden,* 651 F.2d 1354, 1365 (10th Cir.1981) ("Where YCA offenders are not given special treatment in accordance with the law but instead have the same terms and condi-

tions of confinement as other offenders, the imposition of a sentence which tends to be longer on youth offenders raises a potential stumbling block of constitutional dimension.").

manner contrary to law, though we do not suggest that it is, he may seek habeas corpus in the district of his confinement. Section 2255 is not broad enough to reach matters dealing with the execution of sentence.

*Freeman v. United States,* 254 F.2d 352, 353–54 (D.C.Cir.1958) (emphasis in original).[8]

Accordingly, the court must reject Snow's attempts to vacate his sentence pursuant to 28 U.S.C. § 2255.[9]

AFFIRMED.

8. *See also Mordecai v. United States,* 421 F.2d 1133, 1139–40 (D.C.Cir.1969), *cert. denied,* 397 U.S. 977, 90 S.Ct. 1098, 25 L.Ed.2d 272 (1970). In *Mordecai* a prisoner sentenced under the FYCA alleged that the conditions of his confinement were in violation of the Act's provisions (specifically, he alleged that he was not being separated from adult offenders as prescribed by 18 U.S.C. § 5011). In *disposing of the youth offender's claim,* Chief Judge Bazelon ruled:

> The appellant's final contention is that his confinement to a prison used primarily for the incarceration of adult offenders violates the provision of 18 U.S.C. 5011 (1964) that 'youth offenders [sentenced under the Youth Corrections Act] shall be segregated from other offenders ...' Whatever the merit of this contention, his claim is not cognizable under Section 2255.

*Id.* at 1139. Chief Judge Bazelon then quoted *Freeman* with approval reaffirming that the prisoner should have sought relief through a habeas corpus action. *See also United States v. DiRusso,* 535 F.2d 673, 674 (1st Cir.1976) ("Section 2255 ... does not grant jurisdiction over a post-conviction claim attacking the execution, rather than the imposition or illegality of the sentence").

9. It should be noted that Snow was transferred to the Community Treatment Center in Raleigh, North Carolina in May 1984. Snow has not alleged any neglect on the part of the North Carolina center to fulfill the treatment goals of the FYCA nor has he alleged that the Bureau of Prisons plans to return Snow to Englewood, Colorado before the termination of his sentence. The government therefore contends that Snow's argument regarding his treatment at the corrections institute in Englewood, Colorado is moot.

Since we have already deemed Snow's § 2255 action procedurally improper, there is no occasion to reach the mootness issue.