{¶ 1} Defendant-appellant, Kyle Martin, appeals his conviction for conspiracy to commit aggravated murder and sentence for conspiracy to commit aggravated murder and kidnapping. For the reasons that follow, we vacate the finding of guilt as to the conspiracy charge (and, accordingly, its attendant sentence) and we vacate the sentence for kidnapping and remand for resentencing solely on that count.
 {¶ 2} In May 2001, a Cuyahoga Grand Jury returned a ten count indictment against three defendants. Appellant was indicted as follows: count three, tampering with evidence; count four, attempted murder; count five, kidnapping; count six, tampering with records; and count eight, conspiracy to commit aggravated murder. (Case No. CR-407193.) Prior to trial, the State dismissed counts three and six.
 {¶ 3} The case then proceeded to jury trial, with appellant representing himself. At the conclusion of the State's case, appellant moved to dismiss count eight, conspiracy to commit aggravated murder, on the ground that the indictment was defective as to that charge. The State requested, and was granted, an overnight recess "in order to respond in a more considered fashion." When court reconvened the following day, the State dismissed the count of conspiracy to commit aggravated murder. After appellant's Crim.R. 29 motion for acquittal was made and denied as to the remaining counts, he presented a defense. The trial court, sua sponte, included an instruction on attempted murder, a lesser included offense of attempted *Page 4 
aggravated murder. The jury found appellant not guilty of all counts except the kidnapping count. From that verdict appellant appealed.
 {¶ 4} The conviction was reversed in State v. Martin, Cuyahoga App. No. 80198, 2003-Ohio-1499 ("Martin I"). In Martin I, this court reversed the trial court's judgment and remanded for a new trial because appellant was not adequately advised about representing himself and did not properly waive his right to counsel. The Supreme Court of Ohio affirmed this court's decision. State v. Martin, 103 Ohio St.3d 385,2004-Ohio-5471.
 {¶ 5} The State subsequently secured a second indictment against appellant in Case No. CR-463761 ("Martin II"). This indictment charged appellant with conspiracy to commit aggravated murder, insurance fraud and attempted theft. The insurance fraud and attempted theft were new charges, while the conspiracy to commit aggravated murder was the same charge that had previously been dismissed by the State. Those charges were consolidated and tried together with the kidnapping charge fromMartin I.
 {¶ 6} Prior to the trial, appellant moved the court to dismiss the conspiracy to commit aggravated murder charge on two grounds. First, appellant contended that the jury's acquittal in Martin I on the attempted aggravated murder and attempted murder charges barred a subsequent prosecution on the conspiracy to commit aggravated murder, based upon the doctrine of collateral estoppel. Second, appellant contended that retrial on the conspiracy to commit aggravated murder *Page 5 
violated double jeopardy protections. After a hearing, appellant's motion was denied. The case proceeded to trial and the jury found appellant guilty of conspiracy to commit aggravated murder, not guilty of insurance fraud, not guilty of attempted theft, and once again, guilty of kidnapping. At sentencing, appellant requested merger of the conspiracy and kidnapping counts. The court denied appellant's request and sentenced him to five years on the conspiracy count and the maximum ten years on the kidnapping count. The sentences were ordered to be served consecutively. This appeal followed.
 {¶ 7} The testimony at the trial in Martin II was, with one exception, similar to the testimony at the trial in Martin I. In Martin I, this court set forth the case as follows:
 {¶ 8} "The State contended [appellant] was a knowing co-conspirator and active participant in a scheme concocted by his cousin, Tonica Jenkins, and his aunt, Tonica Clement, to fake his cousin's death so she could escape a federal prosecution. The plan was to find a woman similar in appearance and age to Ms. Jenkins and, under the name `Tonica Jenkins,' have her attend doctor's appointments in order to create a medical file. The State alleged that, once sufficient medical records existed, the three intended to kill the victim and burn her body so that the woman's medical records would be used to identify her remains as those of Ms. Jenkins. The objective, the State argued, was to feign Ms. Jenkins' death in order to evade a federal criminal indictment related to drug possession and/or trafficking. *Page 6 
 {¶ 9} "At trial, Martin argued that, while his cousin asked him to locate a female participant for a scheme, when he and Ms. Jenkins enlisted the services of Melissa Latham, the victim, he understood that she would be using Ms. Latham to perpetrate some type of insurance fraud. He claimed to be unaware of any plot to kill the victim until Ms. Jenkins attempted to kill her with an overdose of insulin.
 {¶ 10} "Ms. Latham testified that both Martin and Ms. Jenkins asked her, as part of an insurance scam, to attend some doctor's appointments using Ms. Jenkins' name in exchange for money and drugs. She stayed at Jenkins' home for a few days and used drugs with Martin during this time period. Martin then drove Ms. Latham and his cousin to a dentist in Strongsville, where Ms. Latham had her teeth cleaned and had dental x-rays taken, and where Ms. Jenkins filled out all the paperwork.
 {¶ 11} "In the Jenkins' basement the following day, Ms. Latham claimed, Martin attacked her and either he or Ms. Jenkins hit her in the head several times with a brick. Then, she said, while Martin held her down, Ms. Jenkins repeatedly injected her with insulin. After she `played dead,' she claimed they left and she was able to escape and find help." Martin I at ¶ 2-5.
 {¶ 12} During the trial of Martin II, Charles Moore, a prison inmate with whom appellant had become acquainted during the period of time between the two trials, testified. According to Moore, appellant told him that he and Jenkins planned to find and kill a "Jenkins look-alike" so that Jenkins could escape prosecution on her federal drug case. *Page 7 
 {¶ 13} In his first assignment of error, appellant challenges the denial of his motion to dismiss on two grounds, collateral estoppel and double jeopardy. We address here only the doctrine of double jeopardy, as it is dispositive of the issue raised.
 {¶ 14} Double jeopardy is established by the Fifth Amendment to the Constitution of the United States, which states: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb * * * ." The Fifth Amendment has been made applicable to the states through the Fourteenth Amendment. Benton v. Maryland (1969),395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707.
 {¶ 15} It is well established that the Double Jeopardy Clause protects against successive prosecutions for the same offense. United States v.Dixon (1993), 509 U.S. 688, 696, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556,567; Ashe v. Swenson (1970), 397 U.S. 436, 445-446, 90 S.Ct. 1189, 1195,25 L.Ed.2d 469, 476-477. As stated in Green v. United States (1957),355 U.S. 184, 187-188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204:
 {¶ 16} "The underlying idea [embodied in the Double Jeopardy Clause], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing *Page 8 
state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."
 {¶ 17} In addition to its primary function of safeguarding against governmental overreaching, the double jeopardy guarantee protects a defendant's "`valued right to have his trial completed by a particular tribunal.'" Crist v. Bretz (1978), 437 U.S. 28, 36, 98 S.Ct. 2156, 2161,57 L.Ed.2d 24, 31, quoting Wade v. Hunter (1949), 336 U.S. 684, 689,69 S.Ct. 834, 837, 93 L.Ed. 974, 978. Once a tribunal has decided an issue of ultimate fact in the defendant's favor, the double jeopardy doctrine also precludes a second jury from ever considering that same or identical issue in a later trial. Dowling v. United States (1990),493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed. 2d 708, 717.
 {¶ 18} We agree with appellant's contention that the State's dismissal of the conspiracy count in Martin I barred the prosecution of it inMartin II. In a jury trial, jeopardy attaches when the jury is empaneled and sworn. Dowling, supra. In a bench trial, jeopardy attaches when the court first hears evidence (often referred to as "when the first witness is sworn"). United States v. Martin Linen Supply Co. (1977),430 U.S. 564, 51 L.Ed.2d 642, 97 S.Ct. 1349.
 {¶ 19} There are circumstances, however, when it may be said that jeopardy does not attach despite the swearing-in of the jury or the first witness. In United States v. Scott (1978), 437 U.S. 82,98 S.Ct. 2187, 57 L.Ed.2d 65, the United States Supreme Court held that jeopardy does not attach if the court "terminates the *Page 9 
proceedings favorably to the defendant on a basis not related to factual guilt or innocence." Id. at 92. In particular, the court explained:
 {¶ 20} "We now turn to the relationship between the Double Jeopardy Clause and reprosecution of a defendant who has successfully obtained not a mistrial but a termination of the trial in his favor before any determination of factual guilt or innocence. Unlike the typical mistrial, the granting of a motion such as this obviously contemplates that the proceedings will terminate then and there in favor of the defendant. The prosecution, if it wishes to reinstate the proceedings in the face of such a ruling, ordinarily must seek reversal of the decision of the trial court." Id. at 94.
 {¶ 21} The Supreme Court summarized its position in Scott as follows:
 {¶ 22} "We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause * * *. Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." (Footnote omitted.) Id. at 98-99.
 {¶ 23} The Supreme Court of Ohio, relying on Scott, held in State v.Broughton (1991), 62 Ohio St.3d 253, 581 N.E.2d 541, as follows: *Page 10 
 {¶ 24} "Therefore, we hold that where jeopardy has attached during the course of a criminal proceeding, a dismissal of the case may be treated in the same manner as a declaration of a mistrial and will not bar a subsequent trial when: (1) the dismissal is based on a defensemotion, and (2) the court's decision in granting such motion is unrelated to a finding of factual guilt or innocence." (Footnote omitted.) (Emphasis added.) Id. at 266.
 {¶ 25} In this case, the conspiracy count in Martin I was dismissed by the State at the conclusion of its own case. It was not dismissed upon a defense motion. It was not dismissed sua sponte by the court, as against the wishes of the State. See State v. Calhoun (1968),18 Ohio St.3d 373. This case does not implicate the type of situation discussed inScott, Broughton and Calhoun; hence, re-indictment of the conspiracy count was barred by double jeopardy. Admittedly, there was a defense motion extant that "requested dismissal unrelated to a finding of factual guilt or innocence." But that motion was not ruled on and was, therefore, denied. See Solon v. Solon Baptist Temple, Inc. (1982), 8 Ohio App.3d 347, 457 N.E.2d 858. The State contends that it dismissed for the same reason raised by appellant in his motion. However, the State cannot attack its own indictment by moving for its dismissal at the conclusion of its own case, and thereby avoid jeopardy.
 {¶ 26} Appellant's first assignment of error is sustained and his conviction on the conspiracy to commit aggravated murder charge is vacated. *Page 11 
 {¶ 27} In his second assignment of error, appellant contends that the trial court erred by not merging the kidnapping and conspiracy counts for sentencing. Because we are vacating the conspiracy conviction pursuant to appellant's first assignment of error, this second assignment of error is moot and we decline to address it pursuant to App.R. 12(A)(1)(c).
 {¶ 28} In his third assignment of error, appellant contends that the trial court violated his state and federal constitutional rights by sentencing him to maximum and consecutive sentences based upon factual findings not found by the jury.
 {¶ 29} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, the Supreme Court of Ohio held that judicial findings are unconstitutional and that several provisions of Senate Bill 2 are unconstitutional. The court concluded that a trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive, or more than the minimum sentences. The Foster holding applies to all cases on direct review, which includes the present case. Because the trial court sentenced appellant under unconstitutional statutory provisions, he must be resentenced. See State v. Childs, Cuyahoga App. No. 87408, 2006-Ohio-5016; State v. Malcolm, Cuyahoga App. No. 87622, 2006-Ohio-6024.
 {¶ 30} Appellant also argues that the severance remedy established inFoster violates the ex post facto and due process clauses of the United States Constitution. This issue is not ripe for our review because appellant has yet to be sentenced under *Page 12 Foster. See State v. Anderson, Cuyahoga App. No. 87309, 2006-Ohio-5431;State v. McKercher, Allen App. No. 1-05-83, 2006-Ohio-1772;Malcolm, supra.
 {¶ 31} Accordingly, appellant's third assignment of error is granted in part and overruled in part. Appellant's sentence for kidnapping is vacated and the case is remanded for resentencing.
 {¶ 32} In his fourth and final assignment of error, appellant argues that the trial court improperly considered alleged conduct that he was acquitted of in Martin I. Although we are vacating appellant's sentence, we address this assignment since appellant will have to be resentenced.
 {¶ 33} In sentencing appellant to the maximum term on the kidnapping, the court stated, "I cannot imagine a more serious form of kidnapping than to hold someone for the purpose of extinguishing her life." The court also stated that the victim "was held for purpose of causing her harm and eventually * * * for the purpose [of] causing her demise." Appellant contends that the trial court's comments were in reference to attempted aggravated murder/attempted murder, which he was acquitted of in Martin I. Appellant was convicted in Martin II of conspiracy to commit aggravated murder, however, and those comments certainly could have been directed toward that conviction.
 {¶ 34} Moreover, the Supreme Court of Ohio has expressly recognized that a sentencing court may consider the existence of other charges prior to sentencing even if the defendant has been acquitted on those charges. State v. Wiles (1991), *Page 13 
59 Ohio St.3d 71,78, 571 N.E.2d 97. See, also, United States v.Donelson (C.A.D.C. 1982), 224 U.S. App. D.C. 389, 695 F.2d 583, 590 ("It is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted."); United States v. Watts (1997),519 U.S. 148, 136 L.Ed.2d 554, 117 S.Ct. 633 (It is proper to consider the underlying facts of a charge of which the defendant was acquitted in determining the sentence for the convicted offense).
 {¶ 35} Accordingly, appellant's fourth assignment of error is overruled.
Finding of guilt affirmed as to kidnapping and vacated as to conspiracy to commit aggravated murder. Sentence vacated; case remanded for resentencing.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A.J., and MARY EILEEN KILBANE, J., CONCUR *Page 1